1             IN THE UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF MASSACHUSETTS

3


4
      * * * * * * * * * * * *    18CR10073-NMG-1
5     UNITED STATES OF AMERICA*
                              *
6     VS.                     *    SEPTEMBER 11, 2018
                              *    3:36 P.M.
7     HARRY S. RICHARD        *
                              *
8     * * * * * * * * * * * *    BOSTON, MA

9


10        BEFORE THE HONORABLE NATHANIEL M. GORTON

11                    DISTRICT JUDGE

12                     (Sentencing)

13


14    **APPEARANCES**:

15

      FOR THE GOVERNMENT:    SCOTT LAUER, AFPD
16                           Federal Public Defender Office
                             51 Sleeper Street
17                           5th Floor
                             Boston, MA 02210
18
      FOR THE DEFENDANT:     MARK J. BALTHAZARD, AUSA
19                           United States Attorney's Office
                             1 Courthouse Way
20                           Suite 9200
                             Boston, MA 02210
21
      Court Reporter:        Debra D. Lajoie, RPR-FCRR-CRI-RMR
22                           1 Courthouse Way
                             Boston, MA  02210
23

24             Proceeding reported and produced
                by computer-aided stenography
25

1       11 SEPTEMBER 2018 -- 3:36 P.M.

2              THE CLERK:  This is Criminal Action

3       No. 18-10073, United States of America v.

4       Harry Richard.

5              Will counsel please identify themselves for the

6       record.

7              MR. BALTHAZARD:  Good afternoon, Your Honor.

8       Mark Balthazard on behalf of the United States.

9              THE COURT:  Mr. Balthazard, good afternoon.

10             MR. LAUER:  Good afternoon, Your Honor.

11      Scott Lauer from the Federal Defender Office on behalf

12      of Harry Richard.

13             THE COURT:  Mr. Lauer and Mr. Richard, good

14      afternoon.

15             THE DEFENDANT:  Good afternoon.

16             THE COURT:  We have Ms. Cormier from Probation

17      as well.

18             PROBATION OFFICER:  Yes, Your Honor.

19             THE COURT:  Good afternoon to her.

20             PROBATION OFFICER:  Good afternoon.

21             THE COURT:  We are here on the sentencing of

22      Mr. Harry S. Richard.  And I have received and read the

23      presentence report; the Defendant's sentencing

24      memorandum, together with a group of letters of support

25      for the Defendant.  There are, as I understand it,

1   17 letters in support, plus an article that was

2   submitted from "The Patriot Ledger."  These letters

3   come from family members, from mentees, from friends,

4   and from a group who have been in connection with the

5   Defendant with respect to the youth hockey program in

6   Milton.  I have also received the Government's

7   sentencing memorandum.

8        Those are all of the writings I have received.

9   Is there anything I haven't mentioned that I should

10  have received, Mr. Balthazard?

11       MR. BALTHAZARD:  No, Your Honor.

12       THE COURT:  Or Mr. Lauer?

13       MR. LAUER:  No, Your Honor.

14       THE COURT:  All right.  Then, as I understand

15  it, Mr. Lauer, there are no objections to the

16  presentence report; is that correct?

17       MR. LAUER:  That is correct, Your Honor.

18       THE COURT:  All right.  Then we need to go

19  through the process of establishing the appropriate

20  guidelines.  Recommendations in that regard start on

21  Page 4 of the presentence report, wherein I am advised

22  that the 2016 Guideline Manual applies in this case and

23  that, within that Manual, Section 2T1.1; that is, the

24  filing of false tax returns, is applicable.

25       The base offense level is established in the tax

1    table, which is in Section 2T4.1.  And because the

2    total tax loss here is $353,246, under that tax table,

3    it's more than 250,000 but less than 550,000;

4    therefore, it calls for a base offense level of 18.

5         Do counsel agree with that recommendation?

6         MR. BALTHAZARD:  Yes, Your Honor.

7         MR. LAUER:  Yes, Your Honor.

8         THE COURT:  The Court so finds.

9         There are no role adjustments, but the Defendant

10   is entitled to a three-level downward adjustment for

11   his acceptance of responsibility.  Therefore, he ends

12   up with a total offense level of 15.  And with respect

13   to his criminal history, there there are no prior

14   convictions, so he ends up in Criminal History

15   Category I.

16        Do counsel agree with those calculations?

17        MR. BALTHAZARD:  Yes, Your Honor.

18        MR. LAUER:  Yes.

19        THE COURT:  That being the case, the guideline

20   range of sentencing in this case is 18 to 24 months.

21        And I will, then, hear from the Government first

22   with respect to recommendations for sentencing.

23   Mr. Balthazard.

24        MR. BALTHAZARD:  Thank you, Your Honor.

25        Yes, as written in the Government's sentencing

1    memorandum, the recommendation is that Mr. Richard be

2    sentenced to a term at the low end of the applicable

3    guideline range, 18 months; 12 months of supervised

4    release; restitution in the amount of $353,246; the

5    Government's recommending a $25,000 fine; and a $100

6    special assessment.

7          With respect to the reasons, I'd like to just

8    first briefly address some of the arguments made by the

9    Defendant in his sentencing memorandum.  There are a

10   few.  He's recommending that the Court impose a

11   sentence of straight probation.  His first argument is

12   he blames much of what Mr. Richard did on his

13   alcoholism, but there's no evidence in the record, in

14   the PSR, that that condition was a cause or any factor

15   at all in connection with this offense conduct.

16         To the contrary, the PSR, at Paragraph 50, I

17   believe it is, the Defendant told Probation that his

18   drinking became a problem just about five years ago

19   when he partially retired, which would put it at about

20   2013.  The offense conduct in this case ran from 2010

21   through 2013, mostly before he partially retired.

22   And the count of conviction was for tax year 2011.

23         Moreover, the PSR, at Paragraph 7, there's a

24   list of the amount of unreported income that he

25   received for each of the relevant years.  That shows

1    the vast majority of the diverted funds actually took

2    place in the earlier years, 2010 through 2012; and it

3    also shows that, during that period of time, he was

4    doing quite a lot of business, clearly before he had

5    partially retired and then before the alcohol became a

6    problem.  So the alcoholism really is no reason for a

7    reduced sentence, at least to the extent that it had

8    nothing to do with the offense conduct.

9         He also argues that his age and medical

10   condition are reasons for leniency.  I'd point out that

11   Mr. Richard is only 68 years old.  He is hardly

12   elderly.  And the Government's recommendation for

13   prison is only 18 months.

14        As for the medical argument, the medical

15   condition, he reports in his memo that Mr. Richard has

16   actually been sober since the plea hearing, and there's

17   no evidence that I can see in the record that the

18   symptoms or the other conditions that he had have

19   continued since he's become sober.

20        He argues, also, that he's a first offender and

21   so there should be leniency shown, but I think that

22   should also carry very little weight.  At least in my

23   experience, most tax offenses like this, the Defendant

24   is a first offender, and for that argument to hold sway

25   and for first offenders in tax cases to avoid prison,

1    as a rule, would undercut the whole purpose of general

2    deterrence.

3         He also argues that he accepted responsibility

4    and that there's no reason for specific deterrence, and

5    I think I would agree there's no reason for specific

6    deterrence in this case.  There is nothing to indicate

7    that Mr. Richard is likely to go back and continue his

8    work.  It appears from the memo that he has either

9    fully retired or partially retired, and he's unlikely

10   to commit these same crimes.

11        I would point out, though, that, according to

12   the offense conduct in the PSR, when he was first

13   confronted by the IRS, he did not admit to what he had

14   done; and he, in fact, lied about the size of the

15   business, the amount of income he was receiving and the

16   amount of employees that he had.

17        He also makes an argument asserting that prison

18   is not for rehabilitation, and that's true, but that's

19   really not the reason for a prison sentence in this

20   case.  And it really brings me to the main reasons why

21   a sentence of imprisonment is necessary here.

22        First, it's a serious offense.  It was carried

23   out over several years, involved the concealment of

24   more than $2 million in business receipts and the

25   failure by Mr. Richard to pay about $350,000 in Federal

1   income taxes, so a serious offense.

2          It's also necessary in a case like this to

3   promote respect for the law and in particular to send a

4   message to all of those people who've submitted letters

5   in support and others in his community that respect for

6   the law is important, that people have to pay their

7   taxes.

8          Finally, and I think really the most important

9   reason and particularly in a case like this is to send

10  a message of general deterrence to others, other small

11  business owners, roofers, contractors, retail

12  mom-and-pop shops that might be considering doing what

13  Mr. Richard did or are doing it now and think that, you

14  know, that the risk of prosecution and real punishment

15  is low and it's worth that risk for them to continue to

16  do it.  General deterrence is really the big stick to

17  prevent tax fraud.  It only works when Courts impose

18  sanctions that make clear to others that the risks

19  greatly outweigh the rewards.

20         Clearly that message had not gotten to

21  Mr. Richard.  He had decided that it was worth the risk

22  to put extra money in his pocket, to cheat the

23  Government out of the taxes that were due, and he

24  believed at the time at least that he was unlikely to

25  get caught and unlikely to be punished if he were.

1      It's simply not effective, though, if tax cheats

2  see that the worst that happens is a sentence of

3  probation and that they just have to pay back or pay

4  the taxes that they were obligated to pay in the first

5  place.  And unfortunately, that's the kind of message

6  that goes out when Courts impose sentences of probation

7  in tax cases.

8      I had a tax case very recently, within the last

9  month, where another Judge in this District imposed a

10  sentence of probation, and I know none of us control

11  what the press does, but they put out the message that

12  people want to hear, and the headlines, the lead

13  sentences on most of the reports on that case were

14  that, Defendants avoided prison time, Defendants don't

15  have to spend any time in prison for having cheated the

16  Government out of hundreds of thousands of dollars in

17  taxes.  And that's the kind of message that goes out

18  when Courts impose sentences of probation.

19      I think that's the wrong message.  These tax

20  cases take lot of resources to investigate and

21  prosecute.  The IRS cannot uncover every instance of

22  tax cheats and much less investigate every one that

23  they do, so when a case is prosecuted, even if a

24  Defendant comes in and pleads guilty, and he is getting

25  credit for that, he's getting a reduction in the

1  sentencing guidelines, it's lower than it would be if

2  he had gone to trial; but in cases like this where the

3  resources have been expended, a sentence needs to be

4  imposed that will send the right message, that will

5  deter others, and a sentence of imprisonment is

6  necessary to do so.

7        THE COURT:  Thank you, Mr. Balthazard.

8        Mr. Lauer.

9        MR. LAUER:  As outlined in my memo, Your Honor,

10  we're asking you to consider a probationary sentence.

11        On the one hand, it is true that tax evasion is

12  certainly a serious crime, and the losses involved in

13  this case are substantial.  And Mr. Richard admitted to

14  that, he takes responsibility for what he did, and he's

15  committed himself to repaying what he owes.

16        On the other hand, I think it also must be taken

17  into account that Mr. Richard is 68 years old, that he

18  does have no prior criminal history and that he does

19  have medical issues that are relevant to your

20  sentencing decision.  I also think his background and

21  standing in the community deserve some attention, so

22  I'm going to discuss that.

23        Mr. Richard is a life-long resident of Milton.

24  He is a veteran of the National Guard.  He has lived in

25  the community essentially all of his life and, since

1    the age of 20, has operated a family roofing business

2    with roots dating back to the Civil War.  In operating

3    that business over the course of nearly five decades,

4    he has provided employment and training to many, many

5    young men, not just in roofing but in the youth hockey

6    community.  Many of the former players he coached in

7    youth hockey went on to work for him, and I think

8    you've seen in the letters that have been submitted

9    that he was a formative influence in the life of many

10   of the people whose path he crossed.

11        I would just ask Your Honor to consider those

12   good works, what he did in the Milton youth hockey

13   community.  We are talking about decades of nights,

14   weekends, practices, tournaments, instruction, coaching

15   and everything in between.  This is a man who really

16   did a lot for a lot of young men in the Milton

17   community.  And I did submit a newspaper article from

18   "The Patriot Ledger" that went into some depth about

19   that service.

20        In including many of those letters to you, I'd

21   just like to highlight a few things.  Some people who

22   wrote are people in the community who've known him and

23   his family for decades, some are from young men he

24   coached, some are from young men who he provided

25   employment to.  And I think really the striking thing

1    about what people wrote is not that he was a good boss

2    or a good coach, it's that he made a personal

3    connection and a personal -- he had a personal touch in

4    the lives of many of those people.  There were people

5    who were suffering from drug and alcohol addiction at

6    particularly vulnerable times of their life, and he

7    kept them going to practices, he kept them going to

8    work, he supported them.

9           One person wrote about how he made a point every

10   Mother's Day to remind his employees to get something

11   for their mother.  He's someone who's done a great deal

12   of good in his life, and I don't think that should be

13   lost on this Court.

14          Sadly, he has declined in recent years, largely

15   due to alcoholism.  It is detailed in the PSR that he's

16   been admitted to the hospital on multiple occasions

17   over the past few years, as recently as March of this

18   year.  It is detailed in the presentence report that he

19   suffers from Wernicke's syndrome, which is a

20   neurological condition, essentially alcohol-related

21   dementia, which is the result of chronic alcoholism,

22   long-term alcoholism.  So I think the Court is

23   warranted in giving some consideration to that as well.

24          In sum, Your Honor, I think, viewed as a whole,

25   the evidence is that for many, many, many years, this

1    man has been an upstanding member of the community and

2    someone who did a substantial amount of good in his

3    life.  What he did to land himself here is inexcusable,

4    and I think he's deeply remorseful.  He had a business

5    with his name attached to it, and that meant something

6    to him.  It meant something to him that people in

7    Milton knew the Richard name and thought of him as, you

8    know, a pillar of the community.  And I think that's no

9    longer going to be the case, and living with that is

10    difficult for him.

11    So we would submit that, on balance, a sentence

12    of two years' probation with the order of restitution

13    in the agreed-upon amount would be sufficient but not

14    greater than necessary to accomplish the purposes of

15    sentencing.

16    Thank you.

17    THE COURT:  Thank you, Mr. Lauer.

18    Does the Defendant wish to address the Court

19    before sentence is imposed?

20    THE DEFENDANT:  Yes, Your Honor, just quickly.

21    Your Honor, I apologize for what I did.  I

22    realize the enormous mistake.  I've tried throughout my

23    life to work hard and provide for my family.  I spent

24    many hours working and many hours donating to the youth

25    of Milton, particularly in hockey.  And I want to

1    assure the Government that I will do everything in my

2    power to make amends for what I did.

3          Thank you.

4          THE COURT:  All right.  Thank you, Mr. Richard.

5          Do counsel know of any reason why sentence ought

6    not to be imposed at this time?

7          MR. BALTHAZARD:  No, Your Honor.

8          MR. LAUER:  No, Your Honor.

9          THE COURT:  Then please stand, Mr. Richard.

10         Before I impose sentence, I will address the

11   issues that have come before me today.  And this is a

12   very sad day for everyone in this Courtroom.  You

13   shouldn't be here, and I shouldn't have to sentence

14   you.  You had a good upbringing, a good family, a good

15   family business to run, a high school diploma, a

16   comfortable middle class standard of living.

17         But somewhere along the line, you lost your

18   moral compass.  You got greedy and decided to commit a

19   conscious deliberate crime of not paying your fair

20   share of taxes.  And you did this over a long period of

21   time, at least four years, with at least three chances

22   to stop your criminal conduct when you filed your

23   annual tax returns.

24         You stole $350,000 from the Government, plain

25   and simple.  And guess who had to pay that amount in

1    your stead.  All of the other honest United States

2    citizen taxpayers, that's who.  This country depends on

3    honest citizens assuming their responsibilities to

4    finance the legitimate needs of our Government.  You

5    are not one of those citizens.

6          When you steal that amount of money from

7    anybody, including the Government, no matter whether

8    it's your first crime or one of many, you need to be

9    punished by serving some time in jail.  And that is not

10   only because you need to pay your debt to society, but

11   also because you and anyone else who thinks they can

12   get off scot-free by failing to pay very significant

13   amounts of taxes they owe for the privilege of living

14   and working in this country need to be deterred from

15   committing such crimes.

16         You deserve time in jail for your crime, and you

17   will now get what you deserve.  It is only because of

18   all of those extenuating circumstances that your

19   counsel and that you have mentioned that you're not

20   going to jail for the amount of time that the

21   Government has requested; that is, the low end of the

22   guideline range.  By virtue of these extenuating

23   circumstances and the good that you have done in your

24   life and the amount of contribution that you have made

25   to your community, I am going to reduce that low end,

1   but that does not mean that you don't deserve to go to
2   jail for this very serious crime of stealing
3   350,000-plus dollars.

4          Therefore, pursuant to the Sentencing Reform Act
5   of 1984, and having considered the sentencing factors
6   enumerated in Title 18 of the United States Code,
7   Section 3553(a), it is the judgment of this Court that
8   you, Harry Richard, are hereby committed to the custody
9   of the Bureau of Prisons to be imprisoned for a term of
10  one year and one day.

11          Upon release from imprisonment, you shall be
12  placed on supervised release for a term of one year.
13  And within 72 hours of release from custody of the
14  Bureau of Prisons, you shall report in person to the
15  district to which you are released.

16          It is further ordered that, as a condition of
17  supervision, you are to make restitution to the IRS at
18  the address set forth in the presentence report in the
19  amount of $353,246.  Payment of the restitution shall
20  begin immediately and shall be made according to the
21  requirements of the Federal Bureau of Prisons' Inmate
22  Financial Responsibility Program while you are
23  incarcerated and according to a Court-ordered repayment
24  schedule during your term of supervised release.  All
25  restitution payments shall be made to the Clerk of the

1    United States District Court for the District of

2    Massachusetts and for transfer to the identified

3    victim.

4              You shall notify the United States Attorney's

5    Office for this District within 30 days of any change

6    of mailing or residence address that occurs while any

7    portion of that restitution remains unpaid.

8              No fine is imposed, as it is deemed you do not

9    have the financial ability to pay a fine in addition to

10   restitution.

11             While under the Probation Office's supervision,

12   you are to comply with the following terms and

13   conditions:  First, you shall not commit another

14   Federal, state or local crime; you shall not unlawfully

15   possess a controlled substance; you shall refrain from

16   any unlawful use of a controlled substance and submit

17   to one drug test within 15 days of release from

18   imprisonment and at least two periodic drug tests

19   thereafter, not to exceed 50 tests per year.

20             You are to cooperate in the collection of a DNA

21   sample, as directed by the Probation Office; and you

22   are to comply with the standard conditions that have

23   been adopted by this Court and which are described in

24   the sentencing guidelines at Section 5D1.3(c) and which

25   shall be set forth in detail in the judgment and

1    committal.

2         You are to cooperate with the Examination and

3    Collection Divisions of the IRS within six months of

4    sentencing and provide the Examination Division all

5    financial information necessary to determine prior tax

6    liabilities, provide the Collection Division all

7    financial information necessary to determine your

8    ability to pay; file accurate and complete tax returns

9    for those years for which returns were not filed or for

10   which inaccurate returns were filed and make good-faith

11   effort to pay all delinquent and additional taxes,

12   interest and penalties.

13        You are prohibited from consuming any alcoholic

14   beverages.  You must participate in a program for

15   substance-abuse counseling, as directed by the

16   Probation Office, which program may include testing,

17   not to exceed 50 drug tests per year; and you are to

18   pay the balance of your restitution imposed according

19   to a Court-ordered repayment schedule.

20        You are prohibited from incurring new credit

21   charges or opening additional lines of credit without

22   the approval of the Probation Office while any

23   financial obligation remains outstanding, and you are

24   to provide the Probation Office access to any requested

25   financial information, which may be shared with the

1    Financial Litigation Unit of the United States

2    Attorney's Office.

3         You are required to contribute to the costs of

4    the evaluation, treatment, programming and/or

5    monitoring of the special conditions herein imposed

6    based upon your ability to pay or the availability of

7    third-party payment.

8         It is further ordered that you shall pay to the

9    United States a special assessment of $100, which shall

10   be due and payable immediately.

11        Mr. Richard, you have a right to appeal this

12   sentence.  If you choose to appeal, you must do so

13   within 14 days.  If you cannot afford an attorney, an

14   attorney will be appointed on your behalf; do you

15   understand that?

16        THE DEFENDANT:  Yes, Your Honor.

17        THE COURT:  It is further ordered that you are

18   to self-surrender at an institution designated by the

19   Bureau of Prisons six weeks from today.  My Deputy will

20   help me determine exactly what day that is.

21        THE CLERK:  That is October 23rd, Tuesday,

22   October 23rd.

23        THE COURT:  Tuesday, October 23rd, 2018.  And

24   that is the day on which you shall report to the

25   institution designated by the Bureau of Prisons.

1          Is there anything further business to come

2     before the Court in these proceedings, Mr. Balthazard?

3          MR. BALTHAZARD:  No, Your Honor.  Thank you.

4          THE COURT:  Mr. Lauer?

5          MR. LAUER:  No, Your Honor.

6          THE COURT:  Then we're adjourned.

7          (Adjourned, 4: 203 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

I, Debra D. Lajoie, RPR-FCRR-CRI-RMR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

/s/ Debra D. Lajoie

1/31/2020